**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 13, 2018**

# In the Court of Appeals of Georgia

A18A0883. DEMARCO et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

BROWN, Judge.

Patricia DeMarco, individually, and as administrator of the estate of Philip DeMarco, deceased, filed a complaint against State Farm Mutual Automobile Insurance Company ("State Farm") seeking enforcement of a settlement agreement. She appeals from the superior court's order granting summary judgment in favor of State Farm, contending that genuine issues of material fact exist with regard to (1) whether she unreasonably delayed performing her obligations under the settlement agreement and (2) whether she retracted an alleged anticipatory repudiation of the settlement agreement. For the reasons explained below, we disagree and affirm.

"[I]n reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a de novo standard of review and, thus, view the evidence in a light most favorable to the nonmoving party." (Footnotes omitted.) *Sherman v. Dickey*, 322 Ga. App. 228, 231 (1) (744 SE2d 408) (2013). The record in this case contains limited information about the two underlying liability lawsuits that are related to the petition to enforce a settlement at issue in this appeal. It shows that on July 29, 2007, Philip DeMarco was injured when his vehicle was struck by a car that knocked his vehicle into another lane of traffic, where it was struck again by a different vehicle driven by Jacob Pittman. In March 2008, Philip DeMarco and his wife, Patricia DeMarco, filed a complaint against Pittman and Jackie Kimbrell, the owner of the car driven by Pittman. The complaint alleged that Kimbrell was liable based upon a theory of negligent entrustment.

That same month, State Farm tendered its policy limits of $25,000, provided the DeMarcos agreed to release all of their claims against both Kimbrell and Pittman. In June 2008, a different insurance carrier similarly tendered its policy limits of $25,000 "in release of all claims." The record before us does not include all of the court records from the 2008 lawsuit. From what we can determine, it appears there was some dispute between the parties about the existence of a settlement before April

2

2010.[1] An April 21, 2010 order granting Pittman and Kimbrell's motion for summary judgment "as to the liability of the defendants" references a pending motion in the alternative to enforce a settlement agreement filed by the defendants . The trial court did not rule upon the motion to enforce a settlement agreement.

For reasons we cannot determine from the record before us,[2] Mrs. DeMarco's attorney believed the case could be tried in late 2010, and wrote a letter to both insurance carriers accepting their respective $25,000 offers that had been made in 2008, if they were "still on the table." On November 23, 2010, counsel for State Farm wrote the following letter:

> We are enclosing the following:
>
> 1)    Check number 127705856J in the amount of $25,000.00 made payable to Mr. and Mrs. Demarco and your firm; and,
>
> 2)    Full Release and Notice to Claimants.
>
> The enclosed settlement funds are being delivered to you in trust pending full and complete execution of the enclosed Full Release and Notice to Claimants. Please do not disburse any settlement funds until the enclosed

---

[1] A September 2010 letter from Mrs. DeMarco's attorney states that the 2008 offers were rejected "because the Release provided for a release of all claims."

[2] Without the entire record, we cannot determine if the trial court entertained and granted a motion for reconsideration of its grant of summary judgment in favor of Pittman and Kimbrell.

> Release has been signed and returned to me. Please let me know if you have any questions or concerns.
>
> . . .
>
> P. S. The enclosed check is the old check we sent back and forth several years ago. Although the check is dated 2/14/08, it remains negotiable.

The check was made payable to "Philip DeMarco & Patty DeMarco, individually and as husband and wife & . . . their attorney." The release had signature lines for both of the DeMarcos.

The DeMarcos did not execute the release or cash the check before Mr. DeMarco died on April 13, 2011, approximately five months later. According to a letter from her attorney, Mrs. DeMarco "had an extremely rough time" after her husband died. On October 13, 2011, Mrs. DeMarco filed a second lawsuit against Pittman and Kimbrell that raised a claim of wrongful death. Over one year later, on December 17, 2012, she voluntarily dismissed it without prejudice.[3]

On March 25, 2014, Mrs. DeMarco's attorney, who has represented her from the time of the 2008 lawsuit up to and including this appeal, wrote State Farm's counsel, requesting that it reissue the $25,000 settlement check, and enclosing the

---

[3] These are the only two pleadings from this lawsuit in the record before us. We have no other information about what transpired during the 14 months this lawsuit was pending in the trial court.

original settlement check. Counsel did not mention or enclose the release State Farm had requested over three years before, and at no time has a signed release been returned to State Farm.

On March 21, 2016, Mrs. DeMarco filed a complaint seeking to enforce the settlement based upon State Farm's refusal to issue a new settlement check. State Farm moved for summary judgment based upon the failure of Mrs. DeMarco to perform her obligations under the settlement agreement within a reasonable time (i.e. by returning the release and negotiating the check) and her anticipatory repudiation of the settlement by filing a second complaint against Pittman and Kimbrell. In her response brief, Mrs. DeMarco alleged that when she "recovered sufficiently to leave her home" after her husband's death, "she went to deposit the check, only to find it no longer negotiable."[4] She did not, however, submit an affidavit to support this factual allegation. She contended, nevertheless, that the issue of whether she attempted to perform the contract within a reasonable period of time "is an issue of material fact for the . . . jury" and that she retracted any anticipatory repudiation of

---

[4] The brief contains no allegation as to *when* Mrs. DeMarco allegedly attempted to negotiate the check. Moreover, we cannot determine from the bare allegations in her brief whether the second lawsuit was filed after Mrs. DeMarco's alleged failed attempt to negotiate the check.

the settlement agreement by voluntarily dismissing her wrongful death complaint. After hearing oral argument, the trial court granted State Farm's motion for summary judgment in a one-sentence order.

1. Mrs. DeMarco asserts that when a contract specifies no time for performance, it is presumed that performance must be had within a reasonable time, and that "[w]hat is a reasonable time is a question of fact in each case, to be decided by a jury." We disagree with the contention that, in this particular case, a jury must determine whether Mrs. DeMarco performed within a reasonable time.

As a preliminary matter, we note that State Farm agrees that it reached a settlement with Mrs. DeMarco in 2010. See generally *Tillman v. Mejabi*, 331 Ga. App. 415, 417-418 (771 SE2d 110) (2015) (outlining law regarding acceptance of settlement offers and creation of binding settlement agreement). We are therefore, not deciding whether an enforceable settlement agreement was reached, but rather whether Mrs. DeMarco's subsequent conduct precludes her from enforcing it.

OCGA § 13-4-20 provides: "Performance, to be effectual, must be accomplished by the party bound to perform . . . and must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." While "it is the general rule that what is a reasonable time, under

6

the circumstances attending the transaction, is a matter for determination by a jury," courts are authorized to determine that a delay in a party's performance is unreasonable as a matter of law. *Ferguson v. Bank of Dawson*, 57 Ga. App. 639, 640 (196 SE2d 195) (1938). For example, in *Ferguson*, we concluded that a tender of stock six and a half months "after the contract of sale was executed" was "an unreasonable time [of performance] as a matter of law." Id. See also *Grier v. Brogdon*, 234 Ga. App. 79 (1) (505 SE2d 512) (1998) (failure to obtain financing to purchase land within seven and a half years "was unreasonable as a matter of law").

In this case, the record shows that Mrs. DeMarco did not make a demand for a replacement check until over three years had passed and that she has yet to execute and return the requested release. Under these particular facts and circumstances, the record shows that Mrs. DeMarco failed to perform within a reasonable period of time as a matter of law. "A party seeking specific performance of a contract must show substantial compliance with his part of the agreement in order to be entitled to a decree." (Citations and punctuation omitted.) *Krieger v. Bonds*, 333 Ga. App. 19, 27 (1) (775 SE2d 264) (2015). Likewise, "[a] person who seeks recovery under an alleged executed contract must show performance on his part or that his nonperformance was caused by the act or fault of the opposite party." (Citation and

punctuation omitted.) *Clark's Super Gas v. Tri-State Systems*, 129 Ga. App. 650, 651 (200 SE2d 472) (1973). In this case, Mrs. DeMarco not only failed to perform within a reasonable time, but she also filed an additional lawsuit that deprived State Farm of the benefit of its bargain to settle. Cf. *Ga. 20 Properties v. Tanner*, 255 Ga. App. 6, 11 (3) (564 SE2d 459) (2002) ("law cannot allow events which occurred subsequent to the time the contract was executed to deprive the purchaser of the benefit of his bargain"). Accordingly, the trial court did not err by granting summary judgment in favor of State Farm.[5]

2. Our holding in Division 1 renders moot the remaining enumeration of error on appeal.

*Judgment affirmed. Miller, P. J., and Andrews, J., concur.*

---

[5] In so holding, we recognize that "[c]ompromises of doubtful rights are upheld by general policy, as tending to prevent litigation." *Herring v. Dunning*, 213 Ga. App. 695, 696 (446 SE2d 199) (1994). But again, the issue in this case is not whether a settlement agreement was created, but rather the effect of Mrs. DeMarco's failure to perform her obligations under the settlement agreement within a reasonable time.